**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**KATIE FONDREN CARSON, as Administratrix**            **PLAINTIFFS**
**of the Estate of Brian Christopher Ray, et al.**

**v.**            **CAUSE NO. 3:23cv3063-HTW-LGI**

**RANKIN COUNTY, et al.**            **DEFENDANTS**

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT PREMISED ON QUALIFIED IMMUNITY**

NOW COME Defendants Sheriff Bryan Bailey, Amanda Thompson, Joshua Bridges, Mason Black, Johnathan Franklin, Tommy Hildesheim, and Patrick Thornton, and in support of their Motion for Summary Judgment premised on qualified immunity state as follows:

I. **INTRODUCTION**

Plaintiffs' [1] Complaint was filed on November 7, 2023, in which they allege federal § 1983 claims[1] that the constitutional rights of Brian Christopher Ray ("Ray") were violated when he committed suicide in the Rankin County Adult Detention Center ("Rankin ADC") on November 8, 2020. Per the following, these Defendants submit that the record before this Court does not create any genuine issue of material fact sufficient to preclude the entry of judgment in their favor as a matter of fact and/or law.

II. **STATEMENT OF FACTS**

---

[1] Plaintiffs do not allege any state law claims on the face of their Complaint. To the extent any state law claims are alleged against Defendants, same would be barred by the inmate exemption (Miss. Code Ann. § 11-46-9(1)(m)) and/or the one-year statute of limitations applicable to such state law claim(s) (Miss. Code Ann. § 11-46-11, Miss. Code Ann. § 15-1-35). The Individual Capacity Defendants are likewise immune from state law claims for actions or omissions committed within the course and scope of their employment. *Burnett v. Hinds County*, 313 So. 3d 471, 477 (¶ 16) (Miss. 2020); Miss. Code Ann. § 11-46-7(2).

Ray was booked into the Rankin ADC on October 31, 2020 at 2:44 PM on a bench warrant for failure to appear at court on an underlying controlled substance possession charge, with subsequent bond surrender. Exhibit 1 at PRAR#2 001, 007-009. He answered "No" to the following question during his initial medical screening – "Does inmate's behavior suggest the risk of suicide?" *Id.*, PRAR#2 012. When Ray was asked again on November 5, 2020 whether he had suicidal ideations, he again responded in the negative. *Id.*, PRAR#2 023.

Medical professionals – including a medical doctor and a nurse – saw Ray on November 5, 2020 and determined that he needed to be placed on medical watch for detoxification. Exhibit 2 at PRAR#2 089-090. Ray further provided no indication of any suicidal ideations during his full medical assessments on November 5, 2020, in which he answered "No" to the following questions:

- Are you struggling with suicidal thoughts now?
- Do you have a plan for Suicide or Homicide?
- Do you feel there is nothing to look forward to in the immediate future?
- Have you tried to attempt suicide in the past?
- Do you currently engage in self-harming behaviors?

*Id.*, PRAR#2 040 & 049. Further, a Region 8 mental health professional performed a full assessment on November 5, 2020, and did not determine that he was suicidal or recommend that he be placed on suicide watch. *Id.*, PRAR#2 087-090.

Ray was monitored by medical staff while on medical watch every few hours, including the following dates and times – November 6, 2020 (1:04 AM, 5:17 AM, 7:47 AM, 12:12 PM, 3:58 PM, & 7:53 PM), November 7, 2020 (12:32 AM, 10:14 AM, 12:03 PM, 4:17 PM, & 8:07 PM), and November 8, 2020 (1:36 AM, 4:13 AM, 10:35 AM, 11:53 AM, & 3:36 PM). Exhibit 2 at PRAR#2 057-061. Even though he was occasionally noted to be anxious or irritable, no medical professional recommended that Ray be placed on suicide watch.

Ray was housed in Pod 214 on Sunday, November 8, 2020. Exhibit 4. At or around 5:02 PM on this date, Jailer Chapman began distributing food trays in 214 and picked up food trays at or around 5:14 PM. Exhibit 3, pgs. 5-6 of 7. A surveillance video from inside of Ray's cell shows that he began fiddling with a wall in the shower area around 6:09 PM and concluded this activity at or around 6:14 PM.[2] Exhibit 5. He then began stuffing a t-shirt into a hole in the wall at or around 6:15 PM and hung himself at or around 6:18 PM. *Id.*

At around 7:00 PM, Defendant Mason Black was working the Central Tower and "noticed that cell 141 in pod 214 was showing unlocked. Because the inmate that was housed in cell 141 was on suicide watch, [he] looked to check the camera for cell 141 to make sure the inmate was okay." Exhibit 1, PRAR#2 032. He then switched views to Ray's cell and noticed Ray "hanging in his cell." *Id.* Black notified Defendant Joshua Bridges, a shift sergeant (Exhibit 6, pg. 1 of 6), and called for a medical emergency. Exhibit 1, PRAR#2 032. Bridges arrived at Ray's cell at 7:00:08 PM (Exhibit 5), radioed for assistance, and attempted to untie the knot from around Ray's neck. Exhibit 1, PRAR#2 033.

Defendants Johnathan Franklin, Tommy Hildesheim, and Patrick Thornton each arrived to work at the Rankin ADC at or around 7:00 PM on November 8. Exhibit 6, pgs. 4-6 of 6. Thornton arrived at Ray's cell approximately at 7:00:40 PM (Exhibit 5) and cut the shirt with a pocketknife. *Id.*; Exhibit 1, PRAR#2 032. Franklin arrived at Ray's cell at 7:00:53 PM (Exhibit 5) and started chest compressions at 7:01:07 PM. *Id.*; Exhibit 1, PRAR#2 033. Hildesheim entered Ray's cell at 7:01:34 PM according to the video. Exhibit 5. Nurses began entering Ray's cell by 7:01:52 PM and Brandon Fire Department arrived at 7:09 PM. *Id.* Ray

---

[2] All references to times from the video are approximations using the reference of Brandon Fire Department arriving at 7:09 PM (Exhibit 3, pg. 1 of 7), or 1:01 of the video.

was transported to Merit Health Hospital, accompanied by Franklin, following resuscitation efforts. Exhibit 1, PRAR#2 033. He was pronounced deceased on November 10, 2020. Exhibit 2, PRAR#2 083.

III.     **LEGAL PRECEDENT AND ANALYSIS**

   A.     **Rule 56 Standard of Review**

Rule 56 of the *Federal Rules of Civil Procedure* authorizes the granting of summary judgment in favor of the moving party when it is demonstrated that there exists no genuine issue of material fact precluding the granting of judgment in the movant's favor. Fed. R. Civ. P. 56. When presented with a summary judgment motion, the Court must "examine each issue in the light most favorable to the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). In the Court's review, however, it "must distinguish between evidence of disputed facts and disputed matters of professional judgment," the latter of which affords "deference to the views of prison authorities." *Beard v. Banks*, 548 U.S. 521, 530 (2006). Unless a plaintiff can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

   B.     **The Individual Capacity Defendants are entitled to Qualified Immunity.**

The Individual Capacity Defendants – *i.e.*, Sheriff Bailey, Thompson, Bridges, Black, Franklin, Hildesheim, and Thornton – "are entitled to qualified immunity ("QI") under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018). The Court is "free to decide which of the two prongs of the [QI] analysis to address first." *Buehler v. Dear*, 27 F.4th 969, 982 (5th Cir. 2022).

Qualified immunity "protects all public officers from individual liability except those 'who are plainly incompetent or who knowingly violate the law.'" *Malley v. Briggs*, 475 U.S. 335, 340 (1986). Plaintiffs have the burden under qualified immunity to show that "the unlawfulness of the defendant's conduct was clearly established at the time it occurred." *Buehler*, 27 F.4th at 981. To meet this burden, Plaintiffs "must point to authority at a sufficiently high level of specificity to put a reasonable official on notice that his [/her] conduct is definitively unlawful." *Id.* (citations and internal quotations omitted). The Court's QI analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (citation omitted).

Plaintiffs "also bear the burden of raising a fact issue" regarding violation of Ray's constitutional rights. *Kokesh v. Curlee*, 14 F.4th 382, 392 (5th Cir. 2021). This means that in order to defeat Defendants' QI motion, Plaintiffs "must rebut the defense by establishing that [the Individual Capacity Defendants'] allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct according to that law." *Kokesh*, 14 F.4th at 392 (citations and internal quotations omitted).

Additionally, since Plaintiffs seek to recover under a wrongful death theory, they "must prove both the alleged constitutional deprivation required by § 1983 and the causal link between the defendant's unconstitutional acts or omissions and the death of the victim, as required by [Mississippi's] wrongful death statute." *Stewart v. Harrison County Sheriff's Dep't*, No. 1:07cv1172-LG-JMR, 2009 WL 427113, at *13 (S.D. Miss. Feb. 19, 2009) (quoting *Phillips v. Monroe County*, 311 F.3d 369, 374 (5th Cir. 2002). Accordingly, Plaintiffs have "the additional burden of proving causation between the conduct and the death." *Stewart*, 2009

5

WL 427113, at *13; *see also Murray v. Earle*, 405 F.3d 278, 290 (5th Cir. 2005) ("Section 1983 does require a showing of proximate causation, which is evaluated under the common law standard.").

Finally, the Court must analyze the actions of each Individual Capacity Defendant separately and independently from the actions of others to determine whether any of them are entitled to qualified immunity. *See Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (citation omitted) (Holding that courts must "examine each officer's actions independently to determine whether he is entitled to qualified immunity.")

Whether any of the Individual Capacity Defendants violated Ray's Fourteenth Amendment rights turns on whether any of them "breached his constitutional duty to tend to the basic human needs of persons in [their] charge." *Edmiston v. Borrego*, 75 F.4th 551, 558 (5th Cir. 2023) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996) (en banc)). "Officials breach their constitutional duty, violating a detainee's rights, when 'they had gained *actual knowledge* of the substantial risk of suicide and responded with deliberate indifference.'" *Edmiston*, 75 F.4th at 558-59 (quoting *Converse v. City of Kemah*, 961 F.3d 771, 775 (5th Cir. 2020) (emphasis in original). "Actual knowledge" is not what a jail official "should have known," but instead requires evidence that the jail official was actually "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that he "also [drew] the inference." *Id.* at 559 (quoting *Converse*, 961 F.3d at 775-76). Accordingly, "[d]eliberate indifference is an extremely high standard to meet." *Id.* (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)). Once a jail official is shown to have actual knowledge of a substantial risk of serious harm, the question then becomes whether that jail official "shows a deliberate indifference to that risk 'by failing

6

to take reasonable measures to abate it.'" *Id.* (quoting *Converse*, 961 F.3d at 775-76; *Hare*, 74 F.3d at 648).

1. Amanda Thompson

Thompson was not present at the Rankin ADC on Sunday, November 8, 2020, and gained no knowledge of the events that transpired until the following day – *i.e.*, Monday, November 9, 2020. Exhibit 6, pg. 3 of 6; Exhibit 7. She had no knowledge of a substantial risk of suicide, and accordingly, there is no factual basis for any § 1983 claim against her. Thompson respectfully requests a finding that the claims against her are "frivolous, unreasonable [and/]or groundless." *Loftin v. City of Prentiss*, 33 F.4th 774, 783 (5th Cir. 2022) (citations omitted).

2. Johnathan Franklin, Tommy Hildesheim, and Patrick Thornton

These Defendants did not begin their shift until at or around 7:00 PM on Sunday, November 8, 2020 (Exhibit 6, pgs. 4-6 of 6), or after Ray already hung himself. Their only involvement was to remove the t-shirt from around his neck and/or perform C.P.R. efforts. The claims against them are likewise "frivolous, unreasonable [and/]or groundless" and they are entitled to qualified immunity.

3. Mason Black

Black was the Central Tower officer and had no personal interaction with Ray. Plaintiffs allege that Ray's activity in the shower area of his cell from 6:09 PM through 6:14 PM was a "failed suicide attempt." Complaint, ¶¶ 24-25. But there is no evidence that Black observed this activity in the shower or any following activity until he observed Ray on a video monitor hanging in his cell at 7:00 PM. Even if Black observed Ray's actions in the shower from 6:09 PM to 6:14 PM, there is no evidence that Black recognized this activity as a suicide

7

attempt.[3] Once Black observed Ray hanging in his cell, he immediately contacted Bridges, who responded within seconds and attempted to save Ray's life. Exhibit 1, PRAR#2 032. Ray was on medical watch on November 8, 2020, not suicide watch, and there is no evidence that Black was actually aware of Ray's suicidal intent until 7:00 PM. Moreover, there is no evidence that Ray could have been saved had Black become aware of Ray's suicidal actions earlier.

In short, there is no evidence Black recognized his actions on the night of November 8 were inappropriate in light of the knowledge he had at that time. Accordingly, Black did not violate Ray's Fourteenth Amendment rights, did not violate clearly established law, and is therefore entitled to qualified immunity.

    4.    <u>Joshua Bridges</u>

There are no allegations of supervisory liability against Bridges. Instead, Plaintiffs generally allege that "some or all" of the Individual Capacity Defendants "observed" Ray's shower activity and failed to place him on suicide watch. Complaint, ¶¶ 25-26. There is no evidence that Bridges was notified of Ray's suicidal actions or ideations until 7:00 PM on November 8, 2020, when "Central tower officer [B]lack called me via phone and informed me that lnmate Brian Ray was attempting to hang himself by his neck in pod 214 cell 139." Exhibit 1, PRAR#2 033. Video evidence shows that Bridges responded immediately, freed Ray from the t-shirt, and assisted with resuscitation efforts. Exhibit 5. Accordingly, there is

---

[3] Plaintiffs allege that "[a]ccording to Defendant Thompson, the individual defendants refused and failed to take any remedial measures [following the shower activity] … because they thought he was a 'pussy' and would not attempt to kill himself again." Complaint, ¶ 26. As shown above, Thompson was not present at the Rankin ADC on November 8, 2020, and has no personal, first-hand knowledge of events that transpired. Exhibit 7. Moreover, there is no evidence that Black possessed any knowledge of an earlier "failed suicide attempt."

8

no evidence Bridges recognized his actions on the night of November 8 were inappropriate in light of the knowledge he had at that time. He did not violate Ray's Fourteenth Amendment rights, did not violate clearly established law, and is therefore entitled to qualified immunity.

### 5. Sheriff Bryan Bailey

There are no allegations that Sheriff Bailey was present at the Rankin ADC on November 8, 2020, or had any personal knowledge of Ray's suicide. Instead, the only personal involvement alleged against Sheriff Bailey is as follows:

> 50. The following morning November 9, 2020, [Ray's] mother was notified of his suicide attempt and medical condition.
>
> 51. That day, the Defendant Bailey falsely stated to [Ray's] mother, in front of the hospital and in the presence of two witnesses and a "commander," that [Ray] tried to kill himself after midnight on November 9, 2020.
>
> 52. This deliberate falsehood was communicated by the Defendant Bailey to [Ray's] mother in an effort to deflect suspicion of any misconduct on the part of his detention officers.

Complaint, ¶¶ 50-52.

Even assuming *arguendo* that Sheriff Bailey told Ray's mother – who is not a Plaintiff in this litigation – that Ray's suicide attempt was during the early morning hours of Monday, November 9 instead of the night of Sunday, November 8, it is wholly illogical to assume that such misstatement was "in an effort to deflect suspicion of any misconduct." The fact that Ray's suicide attempt occurred at or around 7:00 PM on November 8, instead of at 12:01 AM on November 9, does not infer that any wrongdoing on the part of any jailer or that there was a conspiracy[4] to cover-up misconduct. Moreover, any such misstatement did not violate

---

[4] To the extent Plaintiffs allege a conspiracy claim under § 1983 or § 1985, the intracorporate conspiracy doctrine would bar such claim. *See Rivera v. Duck*, No. H-17-2404, 2018 U.S. Dist. LEXIS 79490, at *11 (S.D. Tex. May 11, 2018). This doctrine provides that "members of an entity like a [police or sheriff's] department … 'constitute a single legal entity which is incapable of conspiring

the constitutional rights of Plaintiffs or proximately cause Ray's death, and are immaterial to the § 1983 claims before this Court.

To the extent Plaintiffs attempt to hold Sheriff Bailey liable under a theory of supervisory liability, theories of vicarious liability and/or respondeat superior are not viable in a § 1983 claim. *Chipley v. Yazoo County*, No. 3:16cv901-TSL-RHW, 2018 U.S. Dist. LEXIS 66639, at *19 (S.D. Miss. Apr. 20, 2018) (citing *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978)). Without personal participation "in the acts that cause the constitutional deprivation," a supervisor can only be liable under § 1983 if he (a) "implements unconstitutional policies that causally result in the constitutional injury … (*Id.* at *20 (quoting *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)) or (b) fails "to supervise or train if: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Id.* (quoting *Porter*, 659 F.3d at 446). "Deliberate indifference is a stringent standard of fault, requiring proof that [Sheriff Bailey] disregarded a known or obvious consequence of his action." *Porter*, 659 F.3d at 446-47 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)) (internal marks omitted).

<u>Suicide Prevention Policy</u>

Plaintiffs have been in possession of the Rankin ADC's applicable suicide prevention and segregation policies (Exhibit 8, PRAR#2 100-04; 114-16) since on or around March 5, 2021 (Exhibit 9), and these policies are not facially unconstitutional. *See Edwards v. City of*

---

with itself.'" *Id.* (quoting *Thornton v. Merch.*, 526 F. App'x 385, 388 (5th Cir. 2013); *Benningfield v. City of Houston*, 157 F.3d 369, 378-79 (5th Cir. 1998)).

*Balch Springs*, 70 F.4th 302, 308 (5th Cir. 2023). Accordingly, the only means for Sheriff Bailey to be liable under this theory would be if they were "promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Id.* (citation omitted).

There are no allegations that any other inmate has committed suicide in the Rankin ADC. On November 8, 2020, three other inmates were on suicide watch at the Rankin ADC, each were monitored by jailers, and none committed suicide while incarcerated in the Rankin ADC. Exhibit 3. Ray was periodically monitored by medical and mental health professional while incarcerated in the Rankin ADC and was never deemed a suicide risk by these professionals. Exhibit 2. Accordingly, he was not monitored like a detainee on suicide watch and his suicide attempt was not caught until it was too late. These facts, however, do not evidence deliberate indifference on the part of Sheriff Bailey and no clearly established law dictates that he should have acted differently. For these reasons, Sheriff Bailey is entitled to qualified immunity and the claims against him should be dismissed.

<u>Failure to Train or Supervise</u>

Under this theory of § 1983 liability, Sheriff Bailey can only be liable where "(1) [he] either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of [Ray's] rights, and (3) the failure to train or supervise amounts to deliberate indifference." *Davidson v. City of Stafford*, 848 F.3d 384, 397 (5th Cir. 2017) (citations omitted). A plaintiff's failure to adequately plead any of these elements warrants dismissal premised on qualified immunity. *Id.*

Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Davidson*, 848

F.3d at 397 (citations omitted). It may be demonstrated by either pleading that Sheriff Bailey "had notice of a pattern of similar violations," or alternatively, it may be "based on a single incident if the constitutional violation was the highly predictable consequence of a particular failure to train." *Id.* (citations and internal quotations omitted).

Again, Plaintiffs do not allege any prior suicides at the Rankin ADC. Moreover, the single incident exception does not apply, especially in light of the three other detainees on suicide watch who were successfully monitored at the facility. For these reasons, Sheriff Bailey is entitled to judgment on any and all claims against him.

IV.   **CONCLUSION**

Sheriff Bryan Bailey, Amanda Thompson, Joshua Bridges, Mason Black, Johnathan Franklin, Tommy Hildesheim, and Patrick Thornton are entitled to qualified immunity from Plaintiffs' § 1983 claims. For all of the reasons herein, these Individual Capacity Defendants respectfully request that they be granted judgment in their favor and that all claims against them be dismissed with prejudice.

**RESPECTFULLY SUBMITTED,** this 10th day of May, 2024.

**BRYAN BAILEY, AMANDA THOMPSON, JOSHUA BRIDGES, MASON BLACK, JOHNATHAN FRANKLIN, TOMMY HILDESHEIM, & PATRICK THORNTON - DEFENDANTS**

BY:   /s/ Jason E. Dare
**JASON E. DARE**

**OF COUNSEL:**
Jason E. Dare (MSB No. 100973)
jdare@bislawyers.com
BIGGS, INGRAM & SOLOP, PLLC
Post Office Box 14028
Jackson, Mississippi  39236-4028
Telephone:   (601) 987-5307
Facsimile:     (601) 987-5307