IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KATIE FONDREN CARSON, as Administratrix of the
Estate of Brian Christopher Ray, AND on Behalf of the
Wrongful Death Beneficiaries of Brian Christopher Ray,
AND as Mother and Next Friend of B.Z.R., a Minor.                              PLAINTIFFS

VERSUS                                                                    NO. 3:23CV3063-HTW-LGI

RANKIN COUNTY, MISSISSIPPI, AND
BRYAN BAILEY, AMANDA THOMPSON,
JOSHUA BRIDGES, AND MASON BLACK,
In Their Individual Capacities.                                                  DEFENDANTS

JURY TRIAL DEMANDED

FIRST AMENDED COMPLAINT

This is a civil action to recover actual, compensatory and punitive damages, as to the individual capacity defendants, for the Defendants' violation of the Plaintiff's Fourteenth Amendment right as a detainee to adequate medical care and protection from self harm. The following averments support this civil action:

PARTIES

1. The Plaintiff, Katie Fondren Carson, as Administratrix of the Estate of Brian Christopher Ray, administers an estate established in Rankin County, Mississippi, on behalf of the decedent, Brian Christopher "Chris" Ray.

2. The Plaintiff, Katie Fondren Carson, on behalf of the wrongful death beneficiaries of Brian Christopher Ray, is an adult resident citizen of Rankin County,

Mississippi.

3. The Plaintiff, Katie Fondren Carson, as Mother and Next Friend of B.Z.R., a Minor, is an adult resident citizen of Rankin County, Mississippi.

4. The Defendant, Rankin County, Mississippi, is a political subdivision of the State of Mississippi. The Defendant Rankin County, Mississippi may be served with process by service upon its Chancery Clerk, Hon. Larry Swales, 211 East Government Street, Brandon Mississippi 39042.

5. The Defendant, Bryan Bailey, is upon information and belief, an adult resident citizen of Rankin County, Mississippi. At the time of the events and occurrences related in this Complaint, he was employed as the Sheriff of Rankin County. He may be served with process by service of a Complaint and Summons upon him at 221 North Timber Street, Brandon, Mississippi 39042.

6. The Defendant, Amanda Thompson, is upon information and belief, an adult resident citizen of Rankin County, Mississippi. At the time of the events and occurrences related in this Complaint, she was employed as a Lieutenant at the Rankin County Detention Center ("RCDC"). She may be served with process by service of a Complaint and Summons upon her at 221 North Timber Street, Brandon, Mississippi 39042.

7. The Defendant, Joshua Bridges, is upon information and belief, an adult

2

resident citizen of Rankin County, Mississippi. At the time of the events and occurrences related in this Complaint, he was employed as a Sergeant shift supervisor at the RCDC. He may be served with process by service of a Complaint and Summons upon him at 221 North Timber Street, Brandon, Mississippi 39042.

8. The Defendant, Mason Black, is upon information and belief, an adult resident citizen of Rankin County, Mississippi. At the time of the events and occurrences related in this Complaint he was employed as a detention officer at the RCDC. He may be served with process by service of a Complaint and Summons upon him at 221 North Timber Street, Brandon, Mississippi 39042.

## JURISDICTION & VENUE

9. This Court has subject matter jurisdiction of this civil action pursuant to 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. 1343(a)(3) (Civil Rights).

10. Venue is proper in the Southern District of Mississippi, pursuant to 28 U.S.C. § 1391, since the Defendants reside in this judicial district, and a substantial part of the events and omissions giving rise to the claim occurred in this judicial district.

## CAUSE OF ACTION

11. On, or about, October 31, 2020, Chris was surrendered by his bail bonding company to the RCDC.

12. At the time of his surrender to the RCDC, Chris had an outstanding bench

warrant for his arrest for failure to appear in Circuit Court on a felony possession of controlled substance charge.

13. At the time of his surrender, Chris was a pretrial detainee awaiting the disposition of his criminal charge in the Circuit Court of Rankin County.

14. Chris was bedeviled by substance abuse and addiction the better part of his adult life.

15. During a prior detention at the RCDC, Chris was placed on suicide watch, from November 28, 2019 at 3:02 p.m. until December 3, 2019 at 11:00 a.m., due to threats of self-harm.

16. Despite the existence of a documented and available history of threats of self-harm, and Chris' prior placement on suicide watch, the defendants took no measures during Chris' subsequent detention to place him on suicide watch or provide additional monitoring.

17. Due to the COVID-19 pandemic, at the time of his surrender to the RCDC, Chris was placed in segregation in Pod 221, Cell 256.

18. On or about November 5, 2020, Chris was moved from COVID-19 segregation to medical segregation and placed on medical watch due to diagnosed complications from drug withdrawal.

19. At that time, Chris was described by medical personnel at the RCDC as

depressed and anxious.

20. Due to his medical watch, Chris was moved to an observation cell, Pod 214, Cell 139.

21. The cell Chris was placed into for medical watch was monitored by a video camera which provided a live feed to the control tower, the booking area, and the line supervisor's office which permitted detention officers to monitor his cell in real time.

22. During his medical watch Chris was described by medical personnel and detention officers as anxious and depressed.

23. At some point during his detention Chris attempted to commit suicide by tying off a t-shirt or other cloth object to a shower head or other tie-off point in a shower.

24. This first suicide attempt proved unsuccessful because the shower head or other tie-off point failed to support Chris' body weight.

25. This failed suicide attempt was either observed by the Defendant Thompson and other detention officers, and/or was related to the Defendant Thompson and other detention officers, as the Defendant Thompson described this prior suicide attempt to several members of Chris' family after his death.

26. According to the Defendant Thompson, neither she nor any other detention officers took any remedial measures to reduce or eliminate Chris' known serious risk of

5

harm from suicide because they thought he was a "pussy" and would not attempt to kill himself again.

27. Despite the Defendant Thompson observing and/or knowing about Chris' failed suicide attempt, she failed to notify medical personnel or other jail officials of the failed suicide attempt; failed to seek emergency medical care for Chris after the failed suicide attempt; failed to report and document the failed suicide attempt; failed to seek to place Chris on suicide watch; and failed to remove objects from his cell with which he could make further attempts at suicide.

28. The Defendant Thompson acting alone or in concert with other detention officers deprived Chris of adequate or any medical attention or measures to prevent self-harm, and failed to report his failed suicide attempt to medical personnel or other jail officials in contravention of Rankin County policy.

29. The Defendant Thompson acting alone or in concert with other detention officers failed to take any measures to reduce or eliminate Chris' known risk of serious harm from suicide and contravened written Rankin County policies designed to reduce or eliminate the risk of harm from detainee and inmate suicide attempts.

30. The Defendant Thompson's disregard of written Rankin County policy and deliberate indifference to Chris' known risk of suicide occurred due to a law enforcement culture within the RCDC of ignoring known health risks to detainees and

inmates so pervasive as to constitute a practice, custom, and usage of the Defendant Rankin County.

31. This informal policy, practice, custom, and usage of the Defendant Rankin County constituted an objectively unreasonable condition of confinement and manifested deliberate indifference to the medical needs and health of Chris and other arrestees, detainees, and inmates at the RCDC.

32. In the midst of a mental health crisis, after his first failed suicide attempt, at approximately 6:10 p.m. on November 8, 2020, Chris began surveying his cell to find somewhere to use as a tie-off point with which to hang himself.

33. By approximately 6:16 p.m., Chris found a tie-off point by running a t-shirt through holes in the wall of his cell.

34. After finding a tie-off point which would hold his body weight, Chris hanged himself with his t-shirt.

35. Chris accomplished this act of suicide while in an observation cell under 24/7 video surveillance by a detention officer, the Defendant Black, duty bound to continually monitor the video screens in the central tower for the health and safety of arrestees, detainees, and inmates, including Chris.

36. In addition, Chris' cell was subject to 24/7 video surveillance from the booking area and the line supervisor's office, where the Defendant Bridges was located.

37. Defendant Black had an affirmative duty to monitor the video screens from the control tower at least every fifteen minutes for individuals on suicide watch, during which time he would be able to observe all cells on suicide watch and medical watch including Chris' cell.

38. The Defendant Black had an affirmative duty to look after the safety and health of all detainees on suicide watch and medical watch by monitoring the video screens.

39. At the time, of these events the Defendant Black was not a trained and certified detention officer having failed to attend the detention officer training and certification course.

40. The Defendant Bridges had an affirmative duty to monitor the video screens in the line supervisor's office and to supervise the Defendant Black.

41. The Defendant Black and the Defendant Bridges failed to intervene in any way to stop Chris from self-harm despite ongoing live surveillance of his cell which they were under an affirmative duty to monitor.

42. Chris remained hanging in his cell for approximately forty minutes without any observation or intervention by the individual defendants, Black and Bridges, or any other detention officer.

43. At approximately 7:00 p.m., the Defendant Black notified the Defendant

Bridges by telephone that he saw Chris attempting to hang himself in his cell.

44. The Defendant Black then called for medical assistance from within the central tower of the RCDC.

45. The Defendant Bridges, the shift supervisor, went to Chris' cell and attempted to get Chris down but was unable to do so alone.

46. Officer Thornton then entered Chris' cell and used his pocket knife to cut the t-shirt and with the Defendant Bridges' help got Chris down to the floor of his cell.

47. Detention officers, including the Defendant Bridges, officer Franklin, officer Hildesheim, and officer Thornton, and RCDC medical personnel began cardio pulmonary resuscitation on Chris.

48. Emergency medical personnel received a call from the RCDC to respond to a hanging at approximately 7:09 p.m.

49. Upon the arrival of emergency medical personnel found, they found Chris without a pulse or respirations.

50. When asked by first-responders how long Chris had been hanging in his cell, the Defendant Bridges went to the central tower to view the video of Chris' cell.

51. Upon arriving at the central tower, the Defendant Bridges saw the Defendant Black in the tower.

52. The Defendant Bridges rewound the video feed and noted that Chris had

been hanging for approximately forty minutes before the Defendant Black notified him of the incident.

53. At that moment, the Defendant Bridges became aware that the Defendant Black had failed to perform his duty as the central tower officer by failing to monitor the live video feeds of the segregation cells for over forty minutes.

54. The Defendant Bridges did not report or document this information and did not provide this information to first responders attending to Chris.

55. While attending to Chris, first responders were told by detention officers that Chris had been checked on twenty to thirty minutes before he was found hanging and that he had been hanging for approximately ten minutes.

56. The detention officers' statement that Chris was checked on twenty to thirty minutes prior to being found hanging was false, because had Chris been checked on he would have been found hanging much sooner.

57. From the time that Chris began his suicide attempt until he was found hanging, neither the Defendant Bridges nor the Defendant Black checked the video monitors to check on any of the detainees on suicide watch and medical watch in segregation.

58. Chris was transported from the RCDC to a hospital accompanied by officer Franklin.

59. After Chris left the RCDC, the Defendant Bridges conducted a debrief in the line supervisor's office.

60. The Defendant Bridges requested the detention officers during the 7:00 p.m. to 7:00 a.m. shift to write statements regarding the incident.

61. The Defendant Bridges did not request that detention officers working during the prior shift write reports.

62. The individual defendants, Bridges and Black withheld information, and provided incomplete, false, and misleading information to emergency medical personnel, and supervisors.

63. The Defendant Bridges did not document or inform his supervisors that the Defendant Black failed to monitor the video screens, and failed to observe Chris hanging for approximately forty minutes.

64. The Defendant Bridges kept material information concerning Chris' hanging out of his report for the express purpose of covering up the Defendant Black's failure to provide required monitoring of the segregation cells manifesting deliberate indifference to Chris and all detainees in segregation cells.

65. The Defendant Bridges, as the Defendant Black's supervisor is liable for covering up the circumstances of Chris' hanging for the purpose of protecting the Defendant Black, thus affirming and ratifying the deliberate indifference shown

towards Chris' well-being, and covering up a violation of Chris' civil rights.

66. After admission to the hospital, Chris regained a pulse but was diagnosed with severe neurologic damage.

67. The following morning November 9, 2020, Chris' mother was notified of his suicide attempt and medical condition.

68. That day, the Defendant Bailey falsely stated to Chris' mother, in front of the hospital, and in the presence of two witnesses and a "commander," that Chris tried to kill himself after midnight on November 9, 2020.

69. This falsehood was communicated by the Defendant Bailey to Chris' mother in an effort to deflect suspicion of any misconduct on the part of his detention officers.

70. The Defendant Bailey, acting in concert with the other individual defendants, conspired to deprive Chris of his civil right to adequate medical attention and protection from self harm, with knowledge of the fact that Chris made a prior suicide attempt; with knowledge that the individual defendants provided false reports to Rankin County and medical personnel; with knowledge that the individual defendants failed to take any action to seek or provide adequate medical attention for Chris; with knowledge that the individual defendants failed to take any action to protect Chris from self harm; and with knowledge the individual defendants failed to document the prior suicide attempt or notify other RCDC personnel.

71. At all times relevant to this civil action, the Defendant Bailey was a final policymaking official for the Defendant Rankin County, for all matters pertaining to law enforcement and the RCDC, including policies and procedures at the RCDC, and for the healthcare of arrestees, detainees, and inmates kept at the RCDC.

72. The act of the Defendant Bailey, acting in concert with his detention officers and the individual defendants, Thompson, Bridges, and Black, in misleading Chris' mother in an effort to protect the individual defendants from the consequences of their unconstitutional acts and omissions towards Chris, and in affirming and ratifying the acts and omissions of the individual defendants constituted official policy of the Defendant Rankin County.

73. Severely brain damaged and unable to support his life without extreme medical intervention, Chris succumbed to his suicide attempt and died on November 10, 2020.

74. The Defendant Rankin County implemented and had in place a policy, practice, custom, or usage of failing to provide constitutionally adequate training to its jail staff in the recognition and proper handling of serious medical conditions and medical distress, including suicidal ideation, of arrestees, detainees, and inmates at the RCDC.

75. This policy, practice, custom, and usage of the Rankin County constituted an

objectively unreasonable condition of confinement and manifested objective an subjective deliberate indifference to the medical needs and health of Chris and other arrestees, detainees, and inmates.

76. The Defendant Rankin County implemented and had in place a policy, practice, custom, or usage of providing substandard and inadequate medical care to arrestees, detainees, and inmates with serious medical conditions and medical distress, including suicidal ideation, at the RCDC.

77. This policy, practice, custom, and usage of the Defendant Rankin County constituted an objectively unreasonable condition of confinement and manifested objective and subjective deliberate indifference to the medical needs and health of Chris and other arrestees, detainees, and inmates at the RCDC.

78. The Defendant Rankin County implemented and had in place a policy, practice, custom, or usage of failing to refer or transfer arrestees, detainees, and inmates at the RCDC with a serious medical condition or medical distress. including suicidal ideation, to medical facilities in order to provide appropriate and adequate medical care and treatment to arrestees, detainees, or inmates with a serious medical condition or medical distress, including suicidal ideation.

79. This policy, practice, custom, and usage of the Defendant Rankin County constituted an objectively unreasonable condition of confinement and manifested

14

objective and subjective deliberate indifference to the medical needs and health of Chris and other arrestees, detainees, and inmates at the RCDC.

80. At all times relevant to this civil action the individual defendants acted under color of law.

81. At all times relevant to this civil action the individual defendants acted with reckless disregard for Chris' federally protected rights.

82. At all times relevant to this civil action the unconstitutional conditions of confinement to which Chris was subjected by the Defendant Rankin County were objectively unreasonable and manifested objective and subjective deliberate indifference to Chris' safety, health, and life.

83. At all times relevant to this civil action the unconstitutional policies, practices, customs, or usages to which Chris was subjected by the Defendant Rankin County were objectively unreasonable and manifested objective and subjective deliberate indifference to Chris' known serious medical condition.

84. The Defendant Rankin County and the Defendant Bailey maintained a policy, practice, custom or usage which authorized, and/or mandated, and/or condoned, and/or ratified the denial of adequate medical care to arrestees, detainees, and inmates.

85. The aforementioned unconstitutional acts and omissions of the Defendant

Rankin County manifested objective and subjective deliberate indifference to Chris' constitutional right to adequate medical care and protection from self harm.

86. As a direct and proximate result of the unconstitutional acts and omissions of the Defendant Rankin County and the individual defendants, these defendants violated Chris' clearly established constitutional rights guaranteed by the Due Process Clause of the Fourteenth Amendment to adequate medical care and protection from self harm, and resulted in great suffering and agony on Chris' part and his preventable and untimely death.

87. The individual defendants were subjectively aware of a substantial risk of serious harm to Chris but through their unconstitutional acts and omissions and conspiracy to violate his constitutional rights manifested objective and subjective deliberate indifference towards Chris.

## PRAYER

88. Plaintiffs pray for the following damages in an amount to be determined by the trier act and for other relief as follows:

    a. Damages for Chris' future loss of income, medical expenses, and funeral expenses;

    b. Damages for Chris' physical pain and suffering;

    c. Damages for the loss of enjoyment of life which Chris suffered and the

suffering occasioned by his recognition of impending death;

    d. compensatory damages for emotional distress, suffering, and mental anguish which Chris suffered;

    e. compensatory damages to Chris' wrongful death beneficiary for the loss of affection and companionship of their father;

    f. punitive damages against the individual defendants;

    g. reasonable attorney's fees; and

    h. reasonable costs and expenses.

Respectfully submitted, this the _____ day of _____, 2025.

    /s/ Victor Israel Fleitas

    VICTOR I. FLEITAS
    MS BAR NO. 10259
    CHARLES R. MULLINS
    MS BAR NO.9821
    COURTNEY SANDERS
    MS BAR NO. 106444

Victor I. Fleitas, P.A.
452 North Spring Street
Tupelo, Mississippi 38804
662.840.0270 / Telephone
662.840.1047 / Facsimile
fleitasv@bellsouth.net / E-mail

Charles R. "Chuck" Mullins, Esq.
Mullins Law
1146 Lyncrest Avenue
Jackson, Mississippi 39202
chuck@chuckmullinslaw.com

Courtney Sanders, Esq.
Coxwell & Associates
500 North State Street
Jackson, Mississippi 39201
601.948.1600 / Telephone
601.948.7097 / Facsimile
courtneys@coxwelllaw.com

Attorneys for Plaintiffs